IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

L.S. BLAIR CORPORATION,

  Plaintiff,

  *v.*

SITE SERVICE SUPPLY, LLC.,

  Defendant.

CIVIL ACTION

NO. 22-1243-KSM

**MEMORANDUM**

MARSTON, J.                                    **November 2, 2022**

Plaintiff L.S. Blair Corporation ("Blair") alleges that it performed dump truck hauling services for Defendant Site Service Supply, LLC between September 2018 and February 2019. (*See* Doc. No. 1-1 at ¶ 1.)  Although Site Service agreed to pay Blair for its services either when they were provided or within ten days of the receipt of any invoice, it failed to pay the approximately $160,000 that was owed.  (*Id.* at ¶¶ 48–50.)  Blair filed its Complaint in this action on March 31, 2022.  (*See generally id.*)  To date, Site Service has failed to file a response, and Blair now seeks default judgment on its claims for breach of contract and unjust enrichment. (*See* Doc. No. 10.)  It also seeks pre-and post-judgment interest, along with an award of attorney's fees and costs related to bringing this action and pursuing payment of the debt.  The Court held a hearing on the motion on October 5, 2022.[1]  For the reasons discussed below, the motion is granted, with a few modifications.

---

[1] Despite being served with copies of the Motion and the Court's Order scheduling the hearing, Site Service did not attend.

**I.**

This is the second case between the parties about Site Service's failure to pay Blair for the services it provided in late 2018 and early 2019.  (*See* Doc. No. 1 at ¶ 1; *see also* Doc. No. 1-1 (Notice of Removal and Complaint for *L.S. Blair Trucking Co. v. Site Serv. Supply, LLC*, No. 21-782-KSM (E.D. Pa.) (the "First Action")).)  However, before Blair filed either suit, it attempted to reach an amicable resolution outside of the courts.  (Doc. No. 1 at ¶ 22.)  In mid-2019, before pursuing litigation, Blair reached an initial settlement with Site Service and its owner, Anthony Franchi, under which Site Service agreed to make weekly payments of $655.95 toward the debt (the "First Settlement").  (*Id.* at ¶ 3[2]; *see also* Doc. No. 2-1 at 3–6 (copy of the First Settlement Agreement).)  Site Service also agreed to consent to the entry of judgment if it failed to make the required payments, and the First Settlement provided for interest at a rate of 2%, and the award of attorney's fees and costs in the event of default.  (Doc. No. 1 at ¶ 3; *see also* Doc. No. 2–1 at 5 ¶¶ 8, 9.)  Although the First Settlement was documented in writing, neither Site Service nor Franchi signed the Agreement.  (Doc. No. 1-1. at ¶ 2.)  Site Service did, however, make $8,527.35 in payments under the Agreement in September 2019.[3]  (Doc. No. 1 at ¶ 4; *see also* Doc. No. 15-1 (receipts for payments).)  After those initial payments, Site Service failed to pay any more moneys under the First Settlement.  At the time, Site Service owed Blair $153,743.81.  (Doc. No. 1-1 at ¶ 9.)

---

[2] In deciding this motion for default judgment, the Court accepts as true the factual allegations (other than those as to damages) contained in the Complaint.  *See Serv. Emps. Int'l Union Local 32BJ Dist. 36 v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018).

[3] Blair submitted two copies of the First Settlement Agreement.  (*See* Doc. Nos. 1-2 & 2-1.)  One copy mentions the $8,527.35 (Doc. No. 1-2), and the other does not (Doc. No. 2-1).  At the hearing, Blair's counsel confirmed that he believes he revised the Agreement to reflect the payments Site Service initially made in an attempt to get Site Service to sign the Agreement.  (*See* Draft H'rg. Tr. at 27:14–28:12.)

In December 2020, Blair brought claims for fraud, breach of contract, quantum meruit, and enterprise liability against Site Service and Franchi, in the Court of Common Pleas for Philadelphia County.  (*See generally* Doc. No. 1-1.)  Site Service and Franchi removed the case to this Court, and in April 2021, the parties attended a settlement conference with the late Magistrate Judge Marilyn Heffley and again agreed to settle their dispute (the "Second Settlement").  (Doc. No. 1 at ¶ 6.)  The Second Settlement was identical to the First Settlement except instead of weekly payments, Site Service agreed to make monthly payments of $2,550 beginning September 1, 2021.  (*Compare* Doc. No. 1 at ¶ 8 (alleging that initial payment was due May 1, 2021)*, with* Doc. No. 15-3 at 3 (Aug. 17, 2021 version of Second Settlement Agreement, which changed initial payment date from May 1, 2021 to September 1, 2021).)  The Second Settlement also removed any mention of personal liability on the part of Franchi.  (Doc. No. 15-3 at ¶¶ 1, 10.)  Although the parties finalized this Agreement during their conference with Judge Heffley, Site Service once again refused to sign the written agreement and failed to make any of the required payments.  (Doc. No. 1 at ¶ 10.)

On March 31, 2022, Blair filed the current action, asserting claims for breach of contract and in the alternative, unjust enrichment/quantum meruit.  (*See* Doc. No. 1.)  To date, Site Service has neither responded to the Complaint nor entered an appearance in this action. Accordingly, the Clerk of Court entered default against it on July 28, 2022.

**II.**

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of a default judgment."  *Serv. Emps. Int'l Union Local 32BJ, Dist. 36 v. Shamrock Clean, Inc.*, 325 F. Supp. 3d 631, 634 (E.D. Pa. 2018) (quoting Fed. R. Civ. P. 55(a)).  The clerk may enter

default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

When the party files a motion to enter default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (same).  However, before turning to the *Chamberlain* factors, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Serv. Employees Int'l Union*, 325 F. Supp. 3d at 635 (quotation marks omitted).

**A.**

In Count I, Blair brings contract claims for breach of the First and Second Settlement Agreements.[4]

"The validity and enforceability of settlement agreements is governed by state contract law."  *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012); *see also Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999) ("The enforceability of settlement agreements is governed by principles of contract law.").  "Under Pennsylvania[5] law,

---

[4] Count I is based on Site Service's breach of the settlement agreements, not the underlying services contract.  (*See* Doc. No. 1 at 4 (titling Count I as "Breach of the Settlement Agreement").)

[5] In a diversity action, a district court must apply the forum state's choice of law rules. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999).  "Both Pennsylvania law and the Restatement Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." *Id.* Here, the Second Settlement agreement states, "Any dispute arising out of this Agreement, other than a

4

the test for enforceability of an agreement is whether both parties have manifested an intention to

be bound by its terms," "whether the terms are sufficiently definite to be specifically enforced,"

and "whether there was consideration." *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–

99 (3d Cir. 1986); *see also Mazella*, 739 A.2d at 536 ("As with any contract, it is essential to the

enforceability of a settlement agreement that the minds of the parties should meet upon all the

terms, as well as the subject matter, of the agreement." (quotation marks omitted)).  Here, the

only open question on the face of the Complaint is whether Site Service manifested an intent to

be bound by the settlement agreements.  (*See* Doc. No. 1 at ¶¶ 4 ("[N]either defendant signed the

settlement documents."), 10 ("Unfortunately, just as with the First Settlement, Site Service did

not sign the [Second] Settlement documents . . . .").)

It is a question of fact whether a party to a contract has manifested an intention to be

bound by its terms, and the inquiry is an objective one.  *See Shell's Disposal & Recycling, Inc.*,

504 F. App'x at 200–01 (applying Pennsylvania law).  "If a party behaves in such a way that a

reasonable person would apprehend that he intends to be bound by the terms of the agreement,

that party's hidden subjective intent cannot overcome his outward manifestation of agreement."

*Id.* at 201; *see also Sang Koo Park v. Evanston Ins. Co.*, Civil Action No. 19-4384, 2021 WL

5399908, at *3 (E.D. Pa. Nov. 18, 2021) ("[T]he objective intent of a party is determined by

whether a reasonable person would assume the party's behavior suggests an intent to be bound

by the agreement.").  In making this determination, the "presence or absence of a signed writing

is relevant . . . but is not dispositive." *Shell's Disposal & Recycling, Inc.*, 504 F. App'x at 201.

---

proceeding instituted pursuant to the Consent to Judgment, shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania . . . ."  (Doc. No. 15-3 at ¶ 14.)  In addition, Blair has maintained throughout this case that the law of Pennsylvania controls.  (*See* Doc. No. 15 at ¶ 8.)

So long as "all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced." *Mazella*, 739 A.2d at 537; *see also Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) (finding that under New Jersey law, "[a]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing"). In other words, "[i]f the parties have agreed to the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforceability of such agreement." *Shell's Disposal & Recycling, Inc.*, 504 F. App'x at 201 (quotation marks omitted).

Here, although neither settlement was reduced to a signed, written agreement, the allegations in the Complaint show that Site Service agreed to be bound by the terms of both settlements. After the parties entered the First Settlement, but before a written agreement was finalized and signed, Site Service complied with its obligation to make weekly payments and ultimately paid Blair more than $8,500 under that Settlement. In total, four payments were made: (1) $5,903.55 on September 6, 2019, (2) $1,311. 90 on September 19, 2019, (3) $655.95 on September 20, 2019, and (4) $655.95 on September 27, 2019. (*See* Doc. No. 15-1.) Moreover, the last first and third payments were made with at note to "please credit this payment . . . per our pending agreement," and the second payment was made by check with the subject line "Settlement Dist." (*Id.* at 3, 9, 11.)

Likewise, although Site Service did not make any payments under the Second Settlement, Judge Heffley oversaw the parties' negotiations, and her contemporaneous writings to the undersigned confirmed that the parties had reached a final settlement. Judge Heffley also emphasized during the settlement conference that the Second Settlement was binding on the parties. After the conference, Blair's counsel followed up with Site Service's counsel in an

attempt to reduce the settlement to writing stating, "I'm glad we could resolve this, largely along

the prior lines, with Judge Heffley's assistance." (Doc. No. 2-1 at 2 (Email from W.L. Stamps,

Esq. to Saul Steinberg, Esq. (Apr. 5, 2021).)  He also provided copies of the First Settlement

Agreement for opposing counsel to use as a template for the parties' new agreement.  Site

Service's counsel responded to that email with a redline, which reflected the agreed upon

changes:  (1) a change from weekly to monthly payments, and (2) removal of Franchi's personal

liability.  (*See* Doc. No. 15-3 at 2–3 (email from Steinberg, Esq. to Stamps, Esq. (Aug. 17, 2021)

("My client reviewed the agreement and sent me a marked up agreement.  It is attached.  Please

advise if acceptable and if so, my client will promptly execute it.")).)  Notably, the revised

Second Settlement agreement included this paragraph:

> WHEREAS the Parties further agreed to alter the terms of this
> Agreement on April 2, 2021 during a settlement conference with the
> Hon. Judge Marilyn Heffley, which terms are altered below, the
> principal change being that the Parties have agreed to dismiss the
> claims against Franchi with prejudice, which dismissal is a condition
> precedent of Site Service entering into this Agreement.  The Parties
> also agreed to change the payment due dates from weekly to
> monthly, with a monthly payment of Two Thousand Five Hundred
> and Fifty U.S. Dollars ($2,550.00), due on the 1st of each month,
> starting on September 1, 2021.

(Doc. No. 15-3 at 3.)

These facts suggest Blair and Site Service agreed to the essential terms of the First and

Second Settlement.  *See Shell's Disposal & Recycling, Inc.*, 504 F. App'x at 201 ("Here, there is

sufficient evidence that Mr. Shell, on behalf of Shell's Disposal, agreed to the terms of the

settlement agreement on January 15, 2020.  In addition to Judge Wells's notes describing the

agreement, Mr. Shell's own attorney testified that his client left the January 15 mediation session

with the understanding that a settlement had been reached.  In fact, Mr. Shell has never expressly

denied that he orally agreed to the terms as documented in the Written Agreement, or that Judge

Wells explained that his agreement would constitute a binding settlement."); *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 537–38 (E.D. Pa. 2015) ("[Plaintiff's counsel] wrote that [the plaintiff] had 'agreed to settle the case' with the terms contained in his email.  This is an unambiguous indication that the parties had reached an agreement, and . . . the contract is enforceable even though it had not yet been reduced to writing.").

Although Site Service manifested an intent to be bound by both settlements, the Court focuses on the Second Settlement because it superseded the First Settlement.  The two agreements were between the same parties, regarding the same subject matter, and they were inconsistent as to some of the material terms, including the timing of payments and Franchi's personal liability.  In addition, the Second Settlement Agreement states, "This Agreement constitutes the full and complete understanding and agreement between the Parties with respect to the subject matter hereof."  (Doc. No. 15-3 at 5 ¶ 16.)  Accordingly, the Second Settlement Agreement is the relevant contract between the parties.  *See Jaludi v. Citigroup*, 933 F.3d 246, 256 (3d Cir. 2019) ("Under Pennsylvania law, the later of two agreements between the same parties as to the same subject matter generally supersedes the prior agreement."); *Kantz v. AT&T, Inc.*, Civil Action No. 20-531, 2021 WL 1061190, at *5 (E.D. Pa. Mar. 19, 2021) ("As we have stated, a subsequent contract between the same parties regarding the same subject matter supersedes an earlier agreement, even if the initial agreement includes an arbitration clause and the subsequent one does not."); *see also In re Klugh's Estate*, 66 A.2d 822, 825 (Pa. 1949) ("By entering into a subsequent lease for the same properly Castles indicated that he considered the lease of April 1, 1935, non-existent.").

Case 2:22-cv-01243-KSM   Document 16   Filed 11/02/22   Page 9 of 14

Accordingly, Blair has stated a claim for breach of the Second Settlement.[6]

**B.**

Having found that Blair states a legitimate cause of action for breach of contract, the Court turns to the *Chamberlain* factors and finds that they weigh in favor of granting default judgment in this case. First, Blair will be prejudiced if default judgment is denied because it has not been paid the money it is owed. *See Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 ("First, Plaintiffs will certainly be prejudiced if default judgment is denied, as Plaintiffs have not yet received the withdrawal liability that they are owed."). Notably, Blair has waited approximately *four years* to receive payment for the hauling services that it performed for Site Service in late 2018 and early 2019.

Second, Site Service does not appear to have a litigable defense. As discussed above, even though the Second Settlement Agreement was not reduced to a signed writing, Blair has alleged facts that show Site Service manifested an intent to be bound by the Second Agreement. Moreover, we find it telling that Site Service has never denied owing the underlying debt. (*See* Doc. No. 1-2 at 1 (noting that Anthony Franchi denied personal liability, but stating nothing about whether Site Service likewise denied liability).) The Court also finds no concern with jurisdiction, venue, or statute of limitations on the face of the Complaint.

Third, the Court finds that Site Service's delay is due to its own culpable conduct. Site Service was served with copies of the Complaint and Summons, as well as Blair's Motion for Default Judgment, but it has knowingly decided not to enter an appearance or otherwise defend itself in this case. *See Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 (explaining that "culpable

---

[6] Because Blair has stated a claim for breach of contract, the Court does not address Blair's alternative claim for unjust enrichment/quantum meruit.

conduct" refers to conduct "taken willfully or in bad faith," and finding that "Defendant's failure to respond to the complaint and failure to attend the hearing were both 'willful,' in the sense that Defendant accepted service of the complaint and the order setting the hearing and therefore was aware of the complaint and the hearing" but still failed to appear or otherwise respond to the complaint); *cf. Spurio*, 880 F. Supp. at 405 (finding no culpable conduct where the record "contain[ed] no evidence that defendant's two-day delay was intentionally dilatory or otherwise in bad faith"). Moreover, Site Service's failure to appear in this case appears to be the most recent in a series of dilatory actions related to the money it owes Blair.

In sum, all of the *Chamberlain* factors weigh in favor of entering default judgment.

## C.

"Having determined that Plaintiffs are entitled to entry of default judgment, the Court must calculate the proper amount of damages . . . ." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637. Blair seeks $169,300.83, which includes the amount that Site Service owed under the service contract, along with $15,557.02 in attorney's fees and court costs that Blair incurred before filing the current action. (Doc. No. 1 at ¶¶ 4–5.) Blair requests pre-judgment interest "at the statutory rate of 6%" on the full $169,300.83, with interest beginning May 1, 2021. (Doc. No. 10 at ¶ 8.) And it seeks interest going forward at a rate of $9.27 per day. (Doc. No. 15 at ¶ 18.) Last, Blair seeks $5,918.59 that it incurred in attorney's fees and court costs during the current enforcement action. (Doc. No. 10 at ¶ 7.) With some modifications, the Court grants Blair's request.

First, we find it inappropriate to include the attorneys' fees that Blair incurred before filing this action. Notably, the Second Settlement Agreement, which Blair submitted to the Court as the most recent version of the parties' agreement, defines the "Current Debt" as

"$157,890.04." (Doc. No. 15-3 at 3.) To reach this total, the parties subtract $4,146.23—the

$8527.35 that Site Service paid in September 2019 less $4,146.23 in costs and fees—from the

$162,271.16 that Site Service owed as of July 1, 2019. (*Id.*) Thus, the principal amount owed

under the Second Settlement Agreement is $157,890.04, and it does not include the attorney's

fees that had accrued up to that point.

In addition, the Court takes issue with Blair's request for prejudgment interest at a rate of

6%, a rate that it appears to have pulled from the Pennsylvania statute governing prejudgment

interest. *See* 41 Pa. Stat. & Cons. Stat. § 202 ("[R]eference in any document to an obligation to

pay a sum of money 'with interest' without specification of the applicable rate shall be construed

to refer to the rate of interest of six per cent per annum."); *Fernandez v. Levin*, 548 A.2d 1191,

1193 (Pa. 1988) ("For over a century it has been the law of this Commonwealth that the right to

interest upon money owing upon contract is a legal right. That right to interest begins at the time

payment is withheld after it has been the duty of the debtor to make such payment."). The Court

cannot consider the statutory rate because here, the parties' Agreement sets the applicable

interest rate.

Two contractual provisions are relevant to this determination. First, the Second

Settlement Agreement states that beginning September 1, 2021, Site Service will pay Blair the

"Current Debt with 2% interest." (Doc. No. 15-3 at ¶ 6; *see also id.* at ¶ 10 ("Upon payment

default, Blair shall have the right to commence an action against Site Service . . . for the

outstanding amount of the Debt *and accrued interest as of the judgment date . . . .*").) Second,

the agreement states that "[a]ny interest accruing after the filing of a Complaint or the Consent to

Judgment would be at the judgment rate, pursuant to the applicable Rules of Court, unless said

judgment rate is less than 2%, in which case the interest accruing shall be 2%." (*Id.* at ¶ 11.)

The Court assumes that by "judgment rate" the parties were referring to the post-judgment interest rate that applies to a judgment from this Court.  That rate is set by federal statute: "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  That rate is 4.566%.  Given these provisions, we find prejudgment interest appropriate in this case and hold that it accrued at a rate of 2% between September 1, 2021 and March 31, 2022 and at a rate of 4.566% between April 1, 2022 and November 2, 2022.  Likewise, post-judgment interest is appropriate and shall accrue at a rate of 4.566%.

Last, Blair seeks attorney's fees totaling $21,475.61 for its efforts before and during this action.  In general, Pennsylvania disfavors the shifting of attorney's fees.  *See McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009) ("The general rule within the Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." (quotations marks omitted)).  That said, a party can recover fees when provided for by contract.  *See Mosaica Academy Charter Sch. v. Commonwealth Dep't of Educ.*, 813 A.2d 813, 822 (Pa. 2022) (explaining that the American Rule applies "unless there is express statutory authorization, *a clear agreement of the parties*, or some other established exception" (emphasis added)); *see also McMullen*, 985 A.2d at 775 ("As in similar fee-shifting provisions, the Agreement in this case contained the necessary "clear agreement of the parties" that in the event of a breach of the Agreement, the breaching party must pay the attorney fees 'incurred' by the non-breaching party in enforcing the Agreement.  There is no dispute that Husband was the breaching party, and thus, that Wife was entitled to attorney fees incurred in enforcing the

12

Agreement against Husband.").

Here, the Second Settlement agreement states, "Following the occurrence of any payment default, Site Service shall pay upon demand all costs and expenses (*including all attorneys' fees and expenses*) incurred by Blair in the exercise of any of its rights, remedies or powers under this Agreement." (Doc. No. 15-3 at 4–5 ¶ 10 (emphasis added).)  Thus, fee shifting is appropriate in this case beginning on the date that Site Service first defaulted under the Second Settlement, i.e., when it first failed to make a weekly payment as required by the Agreement.  That date was September 1, 2021.

During the default judgment hearing, Plaintiff's counsel, W. Lyle Stamps, Esq., submitted a copy of his billing records, which he supplemented on October 28, 2022.  (*See* Doc. No. 15-4.)  A review of those records and Blair's submissions in connection with the request for default judgment, show that Blair incurred $8,215 in attorney's fees after September 1, 2021 for enforcement of the Second Settlement Agreement.[7]  During the relevant period, Mr. Stamps's hourly rate varied between $250 and $300 per hour, and he billed only for necessary tasks, including drafting the Complaint in this case, seeking default, and attending the default judgment hearing.  Thus, the Court finds $8,215 to be a reasonable amount for fees.  Likewise, Blair is entitled to costs totaling $918.59.

## III.

Because Blair has stated a legitimate cause of action for breach of contract, and the *Chamberlain* factors weigh in favor of granting default judgment, the motion is granted in part,

---

[7] As mentioned above, Blair requests $22,705 in attorneys' fees, the total for all fees incurred in connection with the First and Second Settlement Agreements.  The Court does not address the $14,490.00 in fees that Blair incurred before September 1, 2021 because Blair has not shown that those fees were incurred in connection with Blair's enforcement of the *Second* Settlement.  (*See* Doc. No. 15 at ¶ 15.)

13

and the Court will enter judgment in favor of Blair for:

- The principal amount of $157,890.04,

- Prejudgment interest accruing at a rate of 2% between September 1, 2021 and March 31, 2022 and at a rate of 4.566% between April 1, 2022 and November 2, 2022,

- Post-judgment interest accruing at a rate of 4.566%,

- $8,215 in attorney's fees, and

- $918.59 in costs.

An appropriate order follows.